IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
MARTINSBURG

**LEANN J. NESSELRODTE, on behalf of
herself and all others similarly situated,**

      Plaintiff,

v.                                                  CIVIL ACTION NO. 3:11-CV-95
                                                                (GROH)

**DIVAS, LLC,**

      Defendant.

## ORDER REVERSING PRIOR ORDER OF THE MAGISTRATE JUDGE

      Pending before this Court is Defendant's Motion to Compel Discovery [Doc. 32], filed on May 17, 2012. By this Court's Order of May 18, 2012 [Doc. 34], this matter was referred to Magistrate Judge James E. Seibert for determination. On June 7, 2012, Magistrate Judge Seibert held an evidentiary hearing on the Motion. On that same date, Magistrate Judge Seibert issued an Order denying Defendant's Motion to Compel [Doc. 39].

      On June 21, 2012, Defendant timely filed objections to the Magistrate Judge's Order [Doc. 41]. Defendant raises the following four objections to the Magistrate Judge's Order: (1) the Magistrate Judge's Order misapplies the standards relevant to the discovery of tax returns by applying a qualified privilege, by placing the burden on a defendant to demonstrate that tax information is not available from other sources, and by accepting deposition or interrogatory answers as adequate alternative sources to tax returns; (2) the Magistrate Judge's Order erroneously found that income from other sources would not be relevant to the FLSA economic realities test, and neglects to address other reasons why

tax returns are relevant; (3) the Magistrate Judge's Order erroneously applies a privilege to documents submitted by a tax preparer; and (4) the Magistrate Judge's Order erroneously fails to require Plaintiffs to disclose other relevant financial records and applications. This Court has reviewed the Defendant's objections *de novo*, and finds for the following reasons that the Magistrate Judge's Order should be **REVERSED**.

I.   **BACKGROUND**

The above-styled case is presently before the Court on Defendant's objections to the Magistrate Judge's Order denying Defendant's motion to compel Plaintiffs to produce tax returns and other personal financial information. On November 1, 2011, Plaintiff Leanne Nesselrodte, an exotic dancer at Diva's, filed suit on behalf of herself and all others similarly situated against Defendant to recover damages under the Fair Labor Standards Act, 29 U.S.C. §201, *et seq*. ("FLSA"), and the West Virginia Wage Payment and Collection Act, W. Va. Code §21-5-1, *et seq*. ("WPCA").

The Plaintiff alleges that she and other exotic dancers who performed at the Defendant's club were illegally misclassified as independent contractors, rather than employees, and as such were not paid a minimum wage as required by the FLSA and the WPCA. Plaintiffs seek to recover unpaid minimum wages, liquidated damages in an amount to return them to a minimal standard of living, and attorney's fees and costs.

The Defendant denies that the Plaintiff or any other similarly situated individuals were employees within the context of the FLSA or WPCA, and filed counterclaims against the Plaintiffs, seeking, *inter alia*, an offset for any entertainment fees paid directly to the Plaintiffs in the event the Court should determine the Plaintiffs were employees.

On March 1, 2012, Defendant propounded written discovery requests upon Plaintiffs Nesselrodte and McLaughlin. Specifically, Defendant sought the following information which is currently at issue:

> Request 8: Any and all documents relating to the income you earned while performing as an exotic dancer at establishments *other* than at Diva's, between November 1, 2006, and the present.
>
> Request 9: Any and all documents stating, documenting, memorializing, identifying, or relating to, any monies that you earned from employment or self employment from November 1, 2006, to the present.
>
> Request 11: Any and all documents stating, demonstrating, memorializing, or identifying any monies that you paid to, or received from, any establishment other than Diva's, in regard to any performances or "work" by you as an exotic dancer during the period from November 1, 2006, to the present.
>
> Request 20: Any and all documents stating, demonstrating, memorializing, or identifying any and all monies that you received as an exotic dancer from patrons at any establishment, other than Diva's, from November 1, 2006, to the present.
>
> Request 21: Any and all documents stating, demonstrating, memorializing, or identifying, any source, or sources of income that you have received from November 1, 2006, to the present, and the amount of income received from each such source.
>
> Request 24: Any and all documents that constitute the tip records you maintained pursuant to 26 C.F.R. §31.36053-4(a)(2) relating to your performances or "work" at Diva's.
>
> Request 25: Each and every one of your local, state and federal income tax returns, including all attachments and schedules thereof, for the

                    calendar years 2006 through 2011.

Request 26: Any and all documents used in the preparation of your local, state and/or federal income tax returns for the calendar years 2006 through 2011, including any and all documents used in the preparation of any and all attachments and schedules thereof.

Request 27: Any and all documents you submitted to, or received from, any accountant, tax preparer, or other person, retained or consulted by you in connection with the preparation of your local, state and/or federal income tax returns for the calendar years 2006 through 2011.

Request 28: Any and all documents that you have either received from, or sent to, any local, state, or federal taxing authority, agency, subdivision, or department, for the years 2006 through 2011.

Request 29: Any and all documents stating, demonstrating, memorializing, identifying, or relating to, any and all governmental benefits, whether local, state or federal, that you applied to receive, or actually received, from November 1, 2006, to the present, including but not limited to welfare benefits, social security benefits, disability benefits, WIC benefits, food stamps, or any other form of aid, allowances, income supplements, income assistance, housing assistance, or food vouchers.

Request 33: Any and all applications for credit that you submitted from November 1, 2006, to the present (this request shall include, but not be limited to, applications for credit cards; applications for debit cards; mortgage applications; applications for home improvement loans; applications for home equity loans; application for installment sales; applications relating to land contracts; applications relating to the lease of real property; applications related to vehicle leasing; and any applications for loan(s), credit, or installment payments relating to the purchase or leasing of

                    any real and/or personal property, including but not limited to any vehicles, appliances, or furniture.

Request 35: Any and all documents relating to any accounts that you had or maintained since November 1, 2006, either individually or jointly, in any bank, savings and loan, credit union, or brokerage house (including but not limited to balance and transaction statements, transaction notices, deposit slips, and withdrawal slips).

Request 36: All statements from November 1, 2006, to the present, for any credit card or debit card you possessed, either individually or jointly, during that time period.

Request 47: Provide a completed, signed copy of Form 4506, attached hereto.[1]

Request 48: Provide a completed, signed Form 4506-T, attached hereto.[2]

        a.    Listing years 2006, 2007, 2008, and 2009; and

        b.    Listing years 2010 and 2011.

Request 49: Provide a completed, signed copy of Authorization to Release Information - 15 U.S.C. §1681(a)(2), attached hereto.[3]

Interrogatory 6: For each and every bank, savings or checking account that you have opened or maintained at any time since November 1, 2006 (whether individual or joint), state the name of the financial institution, its address, the account

---

[1] Form 4506 is a release for the IRS to provide a copy of a tax return.

[2] Form 4506-T is a release for a tax return transcript.

[3] An Authorization to Release Information pursuant to 15 U.S.C. §1681(a)(2) authorizes the release of credit reports.

number, and the dates the account was maintained. For any joint account, identify the individual with whom you jointly opened or maintained such account.

Interrogatory 7: State each and every source of income you have received since November 1, 2006, and state the amount received from each source of income.

Interrogatory 8: Have you, since November 1, 2006, made any claim for any form of governmental assistance or benefits, including but not limited to: unemployment benefits, workers' compensation benefits, social security benefits, AFDC benefits, welfare benefits, WIC benefits, or any other form of governmental income assistance or supplements, housing assistance, or food vouchers? If so, please identify each such claim, and fully identify all documents in your possession, custody or control regarding each such claim.

Interrogatory 9: For each and every local, state and federal income tax return that you filed each year from November 1, 2006, to the present:

    a. Identify each and every person who provided you assistance in the preparation or filing of such returns;

    b. State the date each such return was filed or mailed;

    c. Identify each and every document used, or relied upon, in the preparation of such return.

Interrogatory 10: Have you, since November 1, 2006,

    applied for any type of credit, loan, or installment payment (including, but not limited to applications for credit cards; applications for debit cards; mortgage applications; applications for home improvement loans; applications for home equity loans; application for installment sales; applications relating to land contracts; applications relating to the lease of real property; applications related to vehicle leasing; and any applications for loan(s), credit, or installment payments relating to the purchase or leasing of any real and/or personal property, including but not limited to any vehicles, appliances, or furniture)?  If so, with regard to each such application:

    a.     State the name, address, and telephone number of the person, financial institution and/or other entity to whom the application was made or submitted;

    b.     Identify each and every document used by you in preparing the application;

    c.     State the amount of the loan, the line of credit, or the credit limit, as applicable;

    d.     State whether the application was approved or denied.

Interrogatory 11:     As to each credit card you have opened or maintained at any time since November 1, 2006, state: The name, address, and phone number of the issuing financial institution; the type of credit card (e.g. Visa, Master Card, Discover, etc.);

7

> the credit card account number or numbers.

In their responses to the document requests and answers to interrogatories, Plaintiffs raised certain objections, leading Defendant to subsequently file a Motion to Compel [Doc. 32], which motion was subsequently denied by the Magistrate Judge [Doc. 39]. The Defendant's objections to the Magistrate Judge's ruling timely followed thereafter [Doc. 41], and are now before this Court.

## II.   STANDARD OF REVIEW

Pursuant to Rule 72(a) of the Federal Rules of Civil Procedure, this Court is required to consider the objections and modify or set aside any part of the Magistrate Judge's Order that is clearly erroneous or contrary to law.

## III.   DISCUSSION

### A.   A plaintiff's tax returns are subject to a qualified privilege.

"Courts have made it increasingly clear that tax returns in the hands of a taxpayer are not privileged from civil discovery." **Terwilliger v. York International Corp.**, 176 F.R.D. 214, 216 (W.D. Va. 1997). "Nevertheless, judicial consensus exists that, as a matter of policy, great caution should be exercised in ordering the disclosure of tax returns," and "[e]xamination of case law reveals the emergence of a judicially developed 'qualified privilege . . . that disfavors the disclosure of income tax returns as a matter of general federal policy.'" **Id.** (quoting **Eastern Auto Distribs., Inc. v. Peugeot Motors of Am., Inc.**, 96 F.R.D. 147, 148-49 (E.D. Va. 1982)). "A two-prong test has been utilized to assess whether the qualified privilege should be overcome and a party's income tax returns should be disclosed . . . [t]he court must determine whether (1) the tax return is relevant to the

subject matter in dispute; and (2) a compelling need exists for the return, because the information sought is not obtainable from other sources." ***Terwilliger***, 176 F.R.D. at 216-17 (citing ***Eastern Auto Distribs.***, *supra*). "While the party seeking discovery of the tax returns bears the burden of establishing its relevance, the resisting party has the task to identify an alternative source for the information." ***Id.***

Hence, in order to compel production of the Plaintiffs' tax returns, the Defendant in the case *sub judice* must be able to make an initial showing of relevance. Only then will the burden shift to the Plaintiffs to identify an alternative source for the information sought.

> B. **The Plaintiffs' tax returns are relevant to at least two of the factors to be considered under the Economic Realities Test.**

As the Magistrate Judge correctly identified in his Order Denying Motion to Compel, this case turns on the employment relationship between the Plaintiffs and the Defendant, specifically whether the Plaintiffs were employees or independent contractors. The "economic realities test," as identified by the United States Court of Appeals for the Fourth Circuit in ***Schultz v. Capital International Security, Inc.***, 466 F.3d 298 (4th Cir. 2006), determines FLSA employment status.

"An employee is defined as 'any individual employed by an employer' [29 U.S.C. §203(e)(1)], and an 'employer' includes 'any person acting directly or indirectly in the interest of an employer in relation to an employee' [29 U.S.C. §203(d)]." ***Schultz***, 466 F.3d at 304. "In addition, the [FLSA] 'defines the verb "employ" expansively to mean "suffer or permit to work."'" ***Id.*** (quoting ***Nationwide Mut. Ins. Co. v. Darden***, 503 U.S. 318, 326 (1992)); 29 U.S.C. §203(g). "These definitions broaden 'the meaning of "employee" to cover some workers who might not qualify as such under a strict application of traditional

agency or contract law principles." **Nationwide**, *supra*. "In determining whether a worker is an employee covered by the FLSA, a court considers the "economic realities" of the relationship between the worker and putative employee." **Schultz**, 466 F.3d at 304 (citing **Henderson v. Inter-Chem Coal Co.**, 41 F.3d 567, 570 (10th Cir. 1994)). "The focal point is whether the worker 'is economically dependent on the business to which he renders service or is, as a matter of economic reality, in business for himself.'" **Id.**

> The emphasis on economic reality has led courts to develop and apply a six-factor test to determine whether a worker is an employee or an independent contractor. The factors are (1) the degree of control that the putative employer has over the manner in which the work is performed; (2) the worker's opportunities for profit or loss dependent on his managerial skill; (3) the worker's investment in equipment or material, or his employment of other workers; (4) the degree of skill required for the work; (5) the permanence of the working relationship; and (6) the degree to which the services rendered are an integral part of the putative employer's business.

**Schultz**, 466 F.3d at 304-05 (citing **Herman v. Mid-Atlantic Installation Servs., Inc.**, 164 F.Supp.2d 667, 671 (D. Md. 2000)).

The Defendant, citing primarily a case from the Fifth Circuit, **Canada v. Hotel Development-Texas, Ltd.**, 2008 WL 3171940 (N.D. Tex. July 30, 2008), argues that "[w]hether plaintiff earned income from outside sources during the time she worked for defendants and, if so, the amount of such earnings, will certainly assist the trier of fact in determining whether plaintiff was, as a matter of economic reality, in business for herself."

The Defendant additionally agues that "[e]xotic dancers are entitled to take deductions for business expenses, including hair, nails, makeup, transportation, any rental fees paid to the club, gym memberships, tanning, costumes, and cosmetic surgery," and

that "[t]hese items would be itemized in the Schedule C attached to Plaintiffs' tax returns."

Next, the Defendant argues that tax returns and other documents reflecting income are relevant to Defendant's counterclaim that the mandatory dance fees the entertainers collected are service fees that can be used to offset any FLSA wage obligations.

Finally, the Defendant argues that tax returns are relevant to determining whether the Court should, and in what amount, award liquidated damages pursuant to 29 U.S.C. §216(b), which provides that "[a]ny employer who violates the provisions of [29 U.S.C. §206 (minimum wage)] or [29 U.S.C. §207 (maximum hours)] . . . shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages." Pursuant to 29 U.S.C. §260, it is within the "sound discretion" of the district court to award no or reduced liquidated damages if the Defendant's actions were reasonable and in good faith. The Defendant argues that the purpose of liquidated damages is to restore a destitute plaintiff to the minimal standard of living minimum wages are designed to secure, *see* **Brooklyn Sav. Bank v. O'Neil**, 324 U.S. 697, 706-07 (1945), and that Plaintiffs' income levels and resources are therefore relevant to the question of liquidated damages. *See, e.g.,* **Colunga v. Young**, 722 F.Supp. 1479, 1485 (W.D. Mich. 1989) ("[i]n light of the complex and conflicting case law defining who is an 'employee' under the FLSA" the court declined to award liquidated damages).

The Plaintiffs, on the other hand, argue that it is difficult to see which of the six factors utilized in the Fourth Circuit would apply to the Plaintiffs' tax returns. They could only conceivably go to factors (2) and (3); that is, the worker's opportunities for profit or loss

11

dependent on his managerial skill, and the worker's investment in equipment or material, or his employment of other workers.

By the Defendant's own admission, Plaintiffs perform on the premises of the Defendant, and Defendant sets the fees for the various private dances performed by the Plaintiffs. The Defendant also sets the hours during which the Plaintiffs perform. Hence, there is no managerial skill or judgment being utilized by the Plaintiffs to increase their profits. While the Plaintiffs can receive additional sums from patrons in the form of gratuities, these are no different from the tips which a waitress receives for good service in a restaurant. These tips do not result from the exercise of managerial skill. *See* **Schultz**, 466 F.3d at 308 ("[t]here is no evidence the agents could exercise or hone their managerial skill to increase their pay . . . [the putative employer] paid the agents a set rate for each shift worked . . . [t]he [client's] schedule and security needs dictated the number of shifts available and the hours worked . . . [t]here was no way an agent could finish a shift more efficiently or quickly in order to perform additional paid work.").

Moreover, whether or not a Plaintiff filed her tax returns as an employee or as an independent contractor has no bearing on her employment status under the FLSA, because an individual cannot waive his/her FLSA status. *See, e.g.,* **In re Fedex Ground Package System, Inc.**, 2006 WL 3755311 (N.D. Ind. Dec. 14, 2006 at *2); **Harrell v. Diamond A Entm't, Inc.**, 992 F. Supp. 1343, 1353 (M.D. Fla. 1997) ("[i]n deciding whether an individual is an 'employee' within the meaning of the FLSA, the label attached to the relationship is dispositive only to the degree that it mirrors the economic reality of the relationship" (quoting **Donovan v. Tehco, Inc.**, 642 F.2d 141, 143 (5th Cir. 1981))); **Clincy v. Galardi**

***South Enterprises, Inc.***, 808 F. Supp.2d 1326, 1349 (N.D. Ga. 2011).

Additionally, with regard to any potential setoff, this Court has previously held that the Defendant bears the burden of proving the amount of any mandatory minimum dance fees paid to the Plaintiffs from the Defendant's own records.  See ***Ruffin v. Entertainment of the Eastern Panhandle***, 2012 WL 761658 at *3 (N.D. W. Va. March 7, 2012). Therefore, the Plaintiffs' tax returns would not be relevant for this purpose.

With regard to liquidated damages, in order to avoid the assessment of FLSA liquidated damages, a defendant must show that it acted in good faith, and that it had reasonable grounds for believing that it was in compliance with the FLSA.  29 U.S.C. §260. That burden rests with the Defendant, and the Plaintiffs' tax returns would not be relevant in any way for that purpose.

However, the Court does find that the Plaintiffs' tax returns are relevant to at least two of the factors constituting the economic realties test; namely, factor (3), the worker's investment in equipment or material, and factor (5), the permanence of the working relationship.

If the Plaintiffs were claiming tax deductions for hair, nails, makeup, cosmetic surgery, etc., that fact would provide evidence as to the economic reality of the relationship between the Plaintiffs and the Defendant which the Court would be required to take into consideration.  Furthermore, the Plaintiffs' tax returns would constitute the primary and most reliable source for this information.

Likewise, if the Plaintiffs were performing at a wide variety of establishments, this information would also provide evidence as to the economic reality of the relationship

between the Plaintiffs and the Defendant which the Court would be required to take into consideration.  If the Plaintiffs were performing at a wide variety of venues on an irregular or semi-regular basis, that fact would tend to weigh in favor of a finding of independent contractor status, much like a comedian who performs at a wide variety of clubs.  Again, the Plaintiffs' tax returns would constitute the primary and most reliable source for this information.

Therefore, the Court will permit discovery of the Plaintiffs' tax returns, as well as the Plaintiffs' sources of income, and the Defendant's Objection Nos. 1 & 2 are accordingly **GRANTED**.  The Plaintiffs are directed to comply with Document Request Nos. 8, 9, 11, 20, 21, 25, 28, 47, and 48, as well as Interrogatory No. 7.

      **C.**      **No privilege attaches to documents submitted to a tax preparer: such documents are, therefore, discoverable.**

The Defendant has requested that Plaintiffs identify persons who assisted in preparing their tax returns and produce any documents submitted to those persons or otherwise used in the preparation of the Plaintiffs' tax returns.  The Defendant argues that these items are neither "tax returns" nor subject to any privilege.  The Plaintiffs make no argument in opposition.

Prior to 1998, the Supreme Court repeatedly held that no confidential accountant-client privilege exists under federal law.  *See* ***Evergreen Trading, LLC ex rel. Nussdorf v. United States***, 80 Fed. Cl. 122, 133-34 (C.O.F.C. 2007) (collecting cases).  In 1998, however, Congress enacted Section 7525 of the Code, Internal Revenue Service Restructuring and Reform Act of 1998, Pub. L. No. 105-206, §3411(a), 112 Stat. 685, 750 (1998), which provides that:

> With respect to tax advice, the same common law protections of confidentiality which apply to a communication between a taxpayer and an attorney shall also apply to a communication between a taxpayer and any federally authorized tax practitioner to the extent the communication would be considered a privileged communication if it were between a taxpayer and an attorney.

26 U.S.C. §7525(a)(1); *Evergreen*, 80 Fed. Cl. at 134. However, 26 U.S.C.§7525(a)(2) provides that "[p]aragraph 1 may only be asserted in (a) any noncriminal tax matter before the Internal Revenue Service; and (2) any noncriminal tax proceeding in Federal court brought by or against the United States." It is thus clear that no such privilege would attach to any documents which the Plaintiffs provided to their tax preparers, as the instant case is not a tax action involving the IRS or the United States as a party.

Furthermore, even if the statutory privilege were applicable it would be of little use to the Plaintiffs, because the legislative history of section 7525 reveals that it applies only to "communications," not to documents or work product. See *Evergreen*, 80 Fed. Cl. at 134-35. The Court concludes, therefore, that any information concerning who prepared the Plaintiffs' tax returns or any documents submitted to those persons to be used in the preparation of the Plaintiffs' tax returns is discoverable. The Defendant's Objection No. 3 is thus **GRANTED**. The Plaintiffs are directed to comply with Document Request Nos. 26 and 27, as well as Interrogatory No. 9.

    **D.**    <u>**The other financial documents sought by the Defendant are relevant to show sources of income.**</u>

In addition to the Plaintiffs' tax returns, the Defendant also seeks banking records, credit applications, credit reports, and applications for public benefits with regard to the Plaintiffs, which it claims are relevant for the same reasons as the Plaintiffs' tax returns.

15

The Court finds that these records would be relevant to show sources of income, which would be probative with regard to the fifth factor of the Economic Realities Test: the permanence of the working relationship. Defendant's Objection No. 4 is thus **GRANTED**. The Plaintiffs are directed to comply with Document Request Nos. 29, 33, 35, 36, and 49, as well as Interrogatory Nos. 6, 8, 10, and 11.

### IV.  CONCLUSION

Based on the reasoning set forth above, the Court finds that the Defendant's objections to the Magistrate Judge's Order should be **GRANTED**, and that the Order should be, and hereby is, **REVERSED**. The Plaintiffs will comply with Document Request Nos. 8, 9, 11, 20, 21, 25, 26, 27, 28, 29, 33, 35, 36, 47, 48, and 49, as well as Interrogatory Nos. 6, 7, 8, 9, 10, and 11. The Plaintiffs are not required to answer Document Request No. 24.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to all counsel of record and/or *pro se* parties.

**DATED:** October 15, 2012

GINA M. GROH
UNITED STATES DISTRICT JUDGE